U.S. BANK, N.A., as Trustee for the Pooling and Servicing Agreement Dated as of September 1, 2005 Home Equity Mortgage Asset Backed Pass-Through Certificates Series 2005-EMX3, Plaintiff-Appellant,

v.

Brenda LANDA a/k/a Brenda Best, Defendant,

MEADOWLAND VILLA CONDOMINIUM OWNERS ASSOCIATION, INC., Defendant-Respondent.

Court of Appeals

*No. 2010AP3036. Submitted on briefs July 7, 2011.
—Decided August 17, 2011.*

2011 WI App 135

(Also reported in 804 N.W.2d 835.)

179

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *David M. Potteiger* of *Bass & Moglowsky, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Nicholas J. Infusino* of *Madrigrano, Aiello* and *Santarelli, LLC*, Kenosha.

Before Brown, C.J., Reilly and Vergeront, JJ.

¶ 1. REILLY, J.   This action involves the relationship of condominium liens and their priority to mortgages recorded before the assessment of condominium liens. WISCONSIN STAT. § 703.165(5) (2009–10)[1] provides that a condominium lien has priority over all other liens, aside from five exceptions. One of those exceptions is "a first mortgage recorded prior to" a condominium lien. Sec. 703.165(5)(b). Meadowland Villa Condominium Owners Association, Inc. argues that its condominium lien against Brenda Landa is superior to U.S. Bank's first mortgage with Landa, as the register of deeds recorded U.S. Bank's mortgage *after* it recorded

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

180

Landa's second mortgage. Therefore, Meadowland argues, the second mortgage became the first mortgage for purposes of § 703.165(5). We disagree and reverse.

## FACTS

¶ 2. In December 2005, Landa purchased a home for $210,000. Landa financed the entire purchase by taking out two loans from Mortgage Lenders Network USA, Inc. in the amount of $168,000 and $42,000 respectively. Each loan was secured by a real estate mortgage on the property.[2] The $168,000 mortgage consists of fifteen pages of terms and conditions, and the bottom of the first page says "WISCONSIN—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS Form 3050 1/01." The $42,000 mortgage, by contrast, is only four pages long, and the bottom of the first page says "WISCONSIN — SECOND MORTGAGE — 1/80 — FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS." Furthermore, Mortgage Lenders instructed its title company that the $168,000 mortgage was to have the first lien position and the $42,000 mortgage was to have the second lien position. For reasons unstated, however, the $42,000 mortgage was recorded on January 23, 2006, and the $168,000 mortgage was recorded on February 14, 2006.

¶ 3. In June 2008, Meadowland filed a condominium lien against Landa for unpaid fines. Five months later, Meadowland filed a second condominium lien against Landa, this time for unpaid assessments

---

[2] The two loans constituted an 80/20 mortgage loan transaction, with the $168,000 mortgage equaling 80% of the purchase price and the $42,000 mortgage constituting the remaining 20%.

and fines. Shortly thereafter, Mortgage Lenders assigned the $168,000 mortgage to U.S. Bank. By September 2009, Landa had defaulted on her loan payments and U.S. Bank commenced a foreclosure action. U.S. Bank alleged that Meadowland's condo liens were junior and subordinate to the $168,000 U.S. Bank mortgage. Meadowland answered and denied that its liens were junior to the $168,000 U.S. Bank mortgage. The parties disagreed over the interpretation of Wis. Stat. § 703.165(5)(b), which provides that a condominium lien is prior to all other liens except "[a]ll sums unpaid on a first mortgage recorded prior to the making of the assessment." Meadowland argued that it did not matter that Mortgage Lenders intended the $168,000 mortgage to be the first mortgage. According to Meadowland, all that mattered was that the $42,000 mortgage was recorded first, and therefore only the $42,000 mortgage—and not U.S. Bank's $168,000 mortgage—was entitled to priority over Meadowland's liens. U.S. Bank responded that the facts in the record established that the $168,000 mortgage was clearly the first mortgage.

¶ 4. The circuit court concluded that Meadowland's condo liens were "prior, senior and superior" to U.S. Bank's $168,000 mortgage. As the $42,000 mortgage was recorded first, the circuit court ruled that it assumed the "first mortgage" position under Wis. Stat. § 703.165(5)(b). The circuit court therefore determined that the $42,000 mortgage was in the first lien position, followed by Meadowland's condo liens, then U.S. Bank's $168,000 mortgage. U.S. Bank appeals.

## STANDARD OF REVIEW

■

¶ 5. This appeal requires us to interpret Wis. Stat. § 703.165(5)(b). The interpretation of a statute is a

question of law subject to de novo review. *West v. Department of Commerce*, 230 Wis. 2d 71, 74, 601 N.W.2d 307 (Ct. App. 1999).

## DISCUSSION

¶ 6.   WISCONSIN STAT. § 703.165(5)(b) provides that a condominium lien is prior to all other liens except "[a]ll sums unpaid on a first mortgage recorded prior to the making of the assessment."[3] U.S. Bank argues that its $168,000 mortgage is the "first mortgage." In support, it cites to BLACK'S LAW DICTIONARY 1032 (8th ed. 2004), which defines a first mortgage as "[a] mortgage that is senior to all other mortgages on the same property." It also argues that as the $42,000 mortgage says that it is a "SECOND MORTGAGE," the $168,000 mortgage was clearly intended to be the first mortgage. Meadowland responds that as the $42,000 mortgage was recorded first, it must be given priority over the $168,000 mortgage under § 703.165(5)(b).[4]

¶ 7.   We agree with U.S. Bank that the $168,000 mortgage is the first mortgage and thus must be given priority over the $42,000 mortgage under WIS. STAT. § 703.165(5)(b). The first page of the $42,000 mortgage explicitly states that it is a "SECOND MORTGAGE." Furthermore, Mortgage Lenders' loan closing instructions indicated that the $42,000 mortgage was to have the second lien position.

---

[3] WISCONSIN STAT. § 703.165(5) also lists four other exceptions.

[4] Meadowland argues that the $42,000 mortgage is the first mortgage because it won the "race" to be recorded first. This argument misses the real issue, which is:   what is "a first mortgage" for purposes of WIS. STAT. § 703.165(5)(b).

¶ 8. Meadowland asks us to read WIS. STAT. § 703.165(5)(b) to mean that the first mortgage *recorded* is the only mortgage lien superior to a condominium lien, even if the terms of the first recorded mortgage clearly state that it is subordinate to another mortgage. Meadowland's theory fails as both the $168,000 mortgage and the $42,000 mortgage were recorded prior to Meadowland's condominium liens. Section 703.165(5)(b) states that "*a* first mortgage" recorded prior to a condominium assessment is the only mortgage lien superior to a condominium lien. (Emphasis added.) The statute does not say "*the* first mortgage" recorded prior to a condominium assessment is the only mortgage lien that is superior to a condominium lien. We may not ignore the plain meaning of a statute. *See State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. The mortgages on their face reflect that the $168,000 U.S. Bank mortgage is superior to the $42,000 mortgage. The fact that the $42,000 mortgage was recorded prior to the $168,000 mortgage—with both mortgages being recorded before Meadowland's condominium liens were filed—does not alter the $168,000 mortgage's contractual status as the first mortgage.

## CONCLUSION

¶ 9. The order of the circuit court is reversed, and the case is remanded with directions that the $168,000 mortgage is superior to Meadowland's condominium liens, and the $42,000 mortgage is junior to Meadowland's condominium liens.

*By the Court.*—Order reversed and cause remanded with directions.